No. 83–151.  MARSHALL, SUPERINTENDENT, SOUTHERN OHIO CORRECTIONAL FACILITY *v.* WALKER.  C. A. 6th Cir.  Certiorari denied.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and JUSTICE O'CONNOR join, dissenting.

Respondent Walker was indicted in Stark County, Ohio, for murdering an off-duty policeman during a grocery store robbery in July 1972. Two accomplices, the wife of the victim, and a disinterested eyewitness identified respondent as the perpetrator of the murder. Respondent's defense was alibi; the records of the jail in Cuyahoga County, Ohio, showed on their face that Walker was incarcerated there between April 14 and August 1, 1972. If these records were accurate, Walker could not have been in the grocery store on July 22, 1972, when the murder took place. The accuracy of these records was hotly contested at trial.

After a jury trial respondent was convicted of first-degree murder. His conviction was affirmed by the Ohio Court of Appeals and by the Supreme Court of Ohio, *State* v. *Walker*, 55 Ohio St.

2d 208, 378 N. E. 2d 1049 (1978), cert. denied, 441 U. S. 924 (1979). Respondent then sought federal habeas relief in the United States District Court for the Northern District of Ohio, which granted the writ on the ground that six evidentiary rulings of the Ohio trial court concerning the scope of prosecutorial cross-examination and rebuttal testimony denied respondent a fair trial as guaranteed by the Fourteenth Amendment. The Court of Appeals for the Sixth Circuit affirmed the judgment on the same grounds. *Walker* v. *Engle*, 703 F. 2d 959 (1983). I would grant certiorari to review this novel holding that trial rulings on the scope of prosecutorial cross-examination and rebuttal testimony are cognizable on federal habeas. No case from this Court has ever held that they are, and several of our cases strongly suggest that they are not. See *Davis* v. *Alaska*, 415 U. S. 308, 317 (1974); *Lisenba* v. *California*, 314 U. S. 219, 227 (1941); see also *Donnelly* v. *DeChristoforo*, 416 U. S. 637 (1974) (prosecutorial misconduct); *Cupp* v. *Naughten*, 414 U. S. 141 (1973) (erroneous jury instruction).

Respondent has contended throughout that irrelevant and prejudicial evidence was allowed before the jury. The Supreme Court of Ohio rejected his contention with this language:

"Upon a review of the contested testimony, we find that it was relevant, in that it tended to disprove the accuracy of the jail records, which was a question in dispute in the instant cause. The contested evidence went to the credibility of the various jail records by demonstrating the overall inefficiency of the persons and the system in which they were maintained and the general lack of inmate supervision.

"Moreover, upon an examination of the record, we find that the admission of certain of this testimony occurred without an objection and that a great proportion of this testimony occurred during cross-examination. The trial judge is posited with broad discretion in controlling cross-examination, and the appellant has the burden to show a patent abuse of discretion. We find, in the instant cause, that the admission of this testimony was relevant to the credibility of the jail records which support appellant's alibi and was neither an abuse of discretion nor a resultant prejudicial harm to appellant." *State* v. *Walker, supra,* at 214, 378 N. E. 2d, at 1052–1053 (footnote and citations omitted).

The District Court and the Court of Appeals, without suggesting that there was anything peculiar about the Ohio rules regarding relevancy or the trial court's discretion to control the examination of witnesses, picked out six isolated instances in which those courts thought that prosecutorial cross-examination or rebuttal examination had been too broad, thereby infecting respondent's entire trial with some sort of federal constitutional error:

(1) Defense witnesses were asked about the conviction of "Major" Payne, a former Warden of the jail, for theft of property from the jail. Payne had not been Warden at the time respondent was allegedly incarcerated, however, and Payne's conviction occurred after respondent's recorded period of detention. Disagreeing with the Supreme Court of Ohio, the Court of Appeals held that testimony relating to Payne's conviction for stealing evidence had "no apparent connection to the issue whether a *prisoner* could leave the jail *and return* undetected." *Walker* v. *Engle*, 703 F. 2d, at 963 (emphasis in original).

(2) Jail commissary records were introduced to show that Walker made numerous transactions during his confinement, including one on the day of the crime. The prosecutor tried to undermine this circumstantial evidence with testimony from jail deputies that other inmates could have made purchases on Walker's commissary account.

The State also called Frank Lancianese, an examiner for the Office of the State Auditor. He testified that (1) an audit of the commissary account between 1969 and 1975 revealed a $66,000 shortage; (2) the Sheriff's Department obstructed access to the commissary records; and (3) an audit of jail vending machine profits showed $9,000 unaccounted for by the Sheriff's Department. The Court of Appeals determined that this rebuttal testimony was not relevant to impeaching the accuracy of commissary records used by respondent to support his alibi, saying that "the alleged thefts did not affect the *record of commissary transactions* relied on by Walker, but showed merely that *commissary* funds may have at some time been misappropriated by Sheriff's Department personnel." *Id.*, at 964 (emphasis in original).

(3) In the words of the Court of Appeals, "[t]he prosecution was permitted, without any basis in the record, to insinuate [on cross-examination] that several defense witnesses from the Sheriff's Department were being monitored and coached by Tom Booth in fur-

954

therance of a Sheriff's Department coverup of improprieties."
*Ibid.*

(4) Respondent was first located in Chicago, Illinois, and a prosecution rebuttal witness was permitted to testify that Cuyahoga County authorities impeded respondent's return to Stark County. The Court of Appeals rejected the State's claim of relevancy, describing the testimony as "highly irrelevant and prejudicial conjecture." *Ibid.*

(5) The State called as one of its witnesses John Appling, a prisoner who had served as a "range boss" for the cellblock to which Walker was assigned. Appling took the stand, identified himself, and refused to testify on the basis that his testimony might incriminate him. The State then questioned other witnesses concerning Appling, seeking, in the words of the Ohio Supreme Court, "to test the recollection and credibility of the witnesses . . . ." *State* v. *Walker*, 55 Ohio St. 2d, at 218, 378 N. E. 2d, at 1054. The District Court, in sharp contrast, thought that this testimony "suggest[ed] to the jury that Appling's testimony would have been helpful to the prosecution had he testified . . . ." *Walker* v. *Engle*, C79–2132 (ND Ohio, Jan. 28, 1981), App. to Pet. for Cert. A41. The Court of Appeals agreed.

(6) The Court of Appeals also found objectionable the State's use, over objection, of newspaper clippings to refresh the recollection of defense witnesses during cross-examination regarding the conditions at the Cuyahoga County jail. The clippings referred to problems within the jail, and the Court of Appeals thought the use of these clippings had an "inflammatory and prejudicial effect upon the jury." *Walker* v. *Engle, supra,* at 968.

The lower courts agreed that the evidence could sustain respondent's conviction for the murder with which he was charged. What the Court of Appeals did, in effect, was to select from this massive evidence three examples of trial rulings respecting the examination of defense witnesses, one ruling respecting a witness who refused to testify, and two instances of the scope of rebuttal testimony, and to conclude that their combined effect was to deny respondent a "fair trial." In so doing, I think the Court of Appeals went far beyond the permissible scope of federal habeas review of a state conviction.

Whether we as trial judges in this case would have limited cross-examination or rebuttal testimony more stringently than did the judge who presided over the trial is scarcely material to the inquiry on federal habeas corpus. The prosecution was trying to

impeach documentary evidence which gave a criminal defendant, placed at the scene of the crime by several witnesses, an apparently airtight alibi—that he was confined in jail in another county when the crime occurred. The manner in which these records might be impeached, whether by showing potential inaccuracies in the methods by which they were kept, or by showing other deficiencies in the office that was responsible for keeping the records, must under our system be left to the discretion of the trial judge. In *Lisenba* v. *California*, 314 U. S., at 227–228, this Court said:

> "The Fourteenth Amendment leaves California free to adopt a rule of relevance which the court below holds was applied here in accordance with the state's law."

This Court has even gone so far as to overturn a trial judge's ruling *limiting* cross-examination, stating that under the Confrontation Clause of the United States Constitution,

> "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i. e.*, discredit, the witness." *Davis* v. *Alaska*, 415 U. S., at 316.

By failing to heed the rulings in *Lisenba* and *Davis*, the Court of Appeals impermissibly intruded federal habeas review into essentially discretionary rulings of a state trial judge on a hotly contested issue at trial. I would grant certiorari to review its judgment.