**Joseph COOPER, Petitioner–Appellant,**

v.

**Dewey SOWDERS, Warden, Northpoint Training Center, Respondent–Appellee.**

No. 87–5351.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1987.

Decided Jan. 21, 1988.

David W. Thomas (argued), Nicholasville, Ky., for petitioner-appellant.

David Armstrong, Atty. Gen. of Kentucky, Gerald Henry (argued), Frankfort, Ky., for respondent-appellee.

Before LIVELY, Chief Judge,
KEITH and MILBURN, Circuit Judges.

KEITH, Circuit Judge.

Petitioner Joseph Cooper ("Petitioner") appeals from the district court's denial of his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. For the reasons set forth below, we REVERSE and REMAND this action to the district court with instructions to grant petitioner's writ of habeas corpus.

## I.

Petitioner was indicted by the Fayette County Grand Jury on October 11, 1983, for the murder of a taxi driver. A jury found petitioner guilty and sentenced him to life in prison. Petitioner's conviction was affirmed on direct appeal to the Kentucky Supreme Court. However, the decision was not unanimous; two Kentucky Supreme Court justices vigorously dissented, finding that cumulative evidentiary errors rendered petitioner's trial fundamentally unfair.

Petitioner then filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Kentucky. The petition alleged that the trial court erred: 1) by referring to a testifying police officer as an "expert" and allowing him to render his opinion as to the inculpatory nature of certain evidence; 2) by allowing an informant to testify that he had been responsible for the arrest and conviction of other people, thereby bolstering his credibility; 3) by permitting the respondent Commonwealth of Kentucky ("Commonwealth") to call a rebuttal witness to impeach on a collateral matter over objection; and 4) by allowing the petitioner's knife to be introduced into evidence. Petitioner argued that the above alleged errors rendered his trial so fundamentally unfair that he was deprived of his due process rights under the fourteenth amendment to the United States Constitution.

A United States Magistrate issued a report and recommendation suggesting that the petition be denied. With regard to petitioner's first claim, the magistrate adhered to the Kentucky Supreme Court's reasoning and noted that "the trial court's referral to the police officer as an expert referred solely to his discretion of whether or not to make an arrest. The officer's opinion, although admittedly linking Cooper to the crime, stated no conclusion as to his guilt or innocence. Further, the above incidents were both brief and isolated." Joint Appendix at 56. In addressing petitioner's claim that the trial court allowed the informant to testify about his own credibility, the magistrate again agreed with the Kentucky Supreme Court's view that the error was non-prejudicial in view of the other evidence of guilt, and that, standing alone, the error did not render the trial fundamentally unfair. The magistrate also found the remaining claims to be without merit, and as mentioned above, recommended that the petition be denied. This recommendation was adopted by the district court.

## II.

At approximately 7:50 p.m. on November 11, 1981, a taxi cab ran a stop sign, went through an intersection and collided with a tree. Amon Joseph, the cab driver, was found dead inside; he had been stabbed above the right clavicle. Beth Pennington testified that she saw the taxi go through the intersection and that she did not see anyone in the vicinity. Jamie Griffin also stated that she saw the taxi and a person who looked to be black running in the opposite direction. She further stated that this person was wearing a green or brown army jacket, a baseball type hat and heavy shoes.

Robert Hope, a dispatcher with the cab company, testified that the driver had picked up a person at the Hyatt Regency between 7:00 p.m. and 7:10 p.m. Phillip Canter, a cab driver who was at the Hyatt

on the night of the murder, identified from a line-up two persons other than appellant prior to trial; at trial, he could not identify appellant as the person who entered the victim's cab. Charles Maupin, a second cab driver who was at the Hyatt that evening, positively identified appellant at trial, even though he had earlier told police that he was not positive that appellant was the man who got into the cab.

Medical evidence established that the victim was stabbed in several areas, with the fatal wound being above the right clavicle. Dr. Nicholas testified that due to the location of the wounds, the assailant would have to have been right handed or at least would have had to have used his right hand. The petitioner is left-handed. Dr. Nichols further testified that he could not say whether the knife introduced into evidence was indeed the murder weapon.

Jerome Donald, the police informant, testified that he saw petitioner on the night of November 11, 1981. He stated that petitioner was wearing a blood-stained army field jacket and carrying a knife with blood on it. He also stated that he later walked down to the Tally Ho Restaurant and saw petitioner there with the knife. He testified that petitioner attempted to wash the blood off the knife and sell it to the cook.

The restaurant cook testified that petitioner gave him the knife as collateral for food that night and later came back and retrieved it. The cook could not state for sure that the knife introduced at trial was the same knife. He also testified that he examined the knife very closely that night and did not see any evidence that the knife had been recently washed.[1]

Police testimony placed petitioner in the vicinity of the Hyatt Regency in the early evening hours of November 11, 1981. Petitioner was wearing blue jeans, a green army field jacket and a black hat with a brim. Detective Danny Gibbons, the investigating officer, testified that petitioner initially denied having the knife, then admitted to trading the knife for food. Detec-

tive Gibbons also testified that petitioner assisted him in recovering the knife.

### III.

On appeal, petitioner argues that the trial court erred in finding that the "expert" opinion-testimony from the police officer did not deprive him of his right to fundamental fairness; that the judge's comments to the jury concerning the competency and materiality of the police officer's opinion-testimony denied him a fair trial; and that the trial court erred in allowing the police informant to bolster his credibility by answering questions concerning his testimony in prior cases. Petitioner argues that the cumulative effect of these errors operated to produce a trial that was fundamentally unfair. *See Walker v. Engle*, 703 F.2d 959, 963 (6th Cir.), *cert. denied*, 464 U.S. 951, 104 S.Ct. 367, 78 L.Ed.2d 327 (1983), and 464 U.S. 962, 104 S.Ct. 396, 78 L.Ed.2d 338 (1983). We agree with petitioner that the trial court committed errors with regard to each of the above claims and hold that the cumulative effect of the errors denied petitioner due process of law.

We begin our discussion with the clearly established rule that errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding. *Walker*, 703 F.2d at 962 (citing *Bell v. Arn*, 536 F.2d 123 (6th Cir.1976) and *Reese v. Cardwell*, 410 F.2d 1125 (6th Cir.1969)). However, this circuit has held that where the violation of a state's evidentiary rule has resulted in the denial of fundamental fairness, thereby violating due process, federal habeas corpus relief will be granted. *Id.* (citations omitted); *Maglaya v. Buchkoe*, 515 F.2d 265 (6th Cir.), *cert. denied*, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975).

With regard to the first two issues on appeal, the relevant exchange during Detective Gibbons' testimony is as follows:

---

1. There was also evidence from a cashier at the restaurant that petitioner was in the restaurant that night wearing a green army fatigue jacket and carrying a knife. She did not see the transaction take place.

Mr. Roberts: Dan, you have talked about a number of suspects that came up in the investigation through various ways, specifically Fred Croney, Lobronell Jones, and another fellow named Jones, either George or Gray, I am sorry, is that right?

Detective Gibbons: Yes, sir.

Mr. Roberts: Okay. From all of your investigation, have you found any evidence that supports an allegation that any of these people had anything to do with this murder?

Mr. Lewter: Your Honor, I would object to the way he is framing that. He can tell whatever evidence he has seen without stating his conclusion about what it points to or whatever.

The Court: I will overrule the objection. He can give an opinion. He is a police officer and that is his job. He is an expert in that field.

Mr. Lewter: He is an expert on guilt or innocence?

The Court: He is an expert on whether to arrest somebody or not. He didn't say anything about guilt or innocence. He said "suspects" and "arrests". All right, go ahead.

Mr. Roberts: You can answer.

Detective Gibbons: I found no evidence that would link any of those other suspects to this crime.

Mr. Roberts: Or any other suspect?

Detective Gibbons: No.

Mr. Roberts: Not even mentioned by Mr. Lewter or anybody else, if there are any others?

Detective Gibbons: The only evidence we found that would link anyone to this crime would be Mr. Cooper.

Joint Appendix at 407–408.

Petitioner initially argues that the opinion-testimony of Detective Gibbons impugned fundamental fairness because it went directly to the heart of the issue concerning guilt or innocence. The Commonwealth argues that no constitutional prejudice occurred because Detective Gibbons offered no opinion as to petitioner's guilt or innocence; the question was allowed simply to afford the officer the opportunity to clarify evidence concerning the examination of the suspects. We disagree and find that the admission of this testimony constituted error.

The opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence. As the dissenting opinion of Kentucky Supreme Court Justice Liebson correctly noted, "[t]he police officer was permitted to testify to his own, personal opinion that such evidence as there was against other suspects was insufficient to justify their arrest.... This opinion suggests to the jury the guilt of the accused and the innocence of other suspects." *Cooper v. Kentucky*, No. 84–SC–494–MR, slip op. at 2 (Ky. Feb. 28, 1985) (Liebson, J. dissenting). We agree with Justice Liebson that the circumstances for reversal in this case are stronger than in *Nugent v. Commonwealth*, 639 S.W.2d 761 (Ky.1982) (trial court erred in permitting evidence from witness who had not witnessed the crime that he thought the accused had probably committed). *See also Kennedy v. Hageman*, 704 S.W.2d 656, 659 (Ky.Ct.App.1985) (state trooper's testimony that he listed appellant's improperly parked vehicle in his police report as a contributing factor in the collision was impermissible because it usurped the function of the jury to determine whose negligence caused the accident). The officer did not talk about probable cause to make an arrest; he expressly stated that all of the evidence pointed to petitioner as the perpetrator of the crime. Thus, "the difference between evidence justifying arrest and evidence of guilt is a nice legal point that was never explained to the jury." *Cooper*, slip op. at 2 (Liebson, J. dissenting).

█ Petitioner also argues that the trial judge's comments to the jury concerning the competency of the officer's opinion served to deny him a fair trial. The Commonwealth argues that the judge inadvertently used the word "expert," and thus fundamental fairness was not impugned. We disagree with the Commonwealth's argument.

The trial court's commentary was clearly impermissible. If Detective Gibbons was going to testify as an expert, it was required under Kentucky law that he be properly qualified. *Norton v. Gordon Foods, Inc.*, 458 F.2d 1071, 1073 (6th Cir. 1972); R. Lawson, *The Kentucky Evidence Law Handbook* § 6.10 (2d ed. 1984). There was no proof that he was qualified to express such an opinion. Also, it is clear that expert opinion testimony is admissible only if:

1. It involves a matter that is scientific, technical or specialized in character and is outside the scope of common knowledge and experience, and

2. It will aid the jury in understanding the evidence in resolving the issues.

*Greer's Adm'r v. Harrell's Adm'r*, 306 Ky. 209, 206 S.W.2d 943 (1947); R. Lawson, *The Kentucky Evidence Law Handbook* § 6.10 (2d ed. 1984). There was nothing scientific, technical or specialized about the officer's opinion. Nor was there anything in the opinion that was outside the scope of common knowledge or experience as required by the law of evidence. Furthermore, the testimony did not aid the jury in understanding the evidence. What the testimony did was give the jury an insider's opinion on who committed the crime. In other words, the officer's "expert" testimony invaded the province of the jury. Thus, the court's comment was highly prejudical and "was tantamount to instructing the jury on this critical subject." *Cooper*, slip op. at 2 (Liebson, J. dissenting).

■ Finally, petitioner argues that he was denied a fair trial when the court allowed the police informant to answer questions concerning the informant's "reliability" in other cases, thereby bolstering his credibility. We agree. The informant's testimony in other cases is not relevant to his testimony in this case. *Galbraith v. Winn*, 459 S.W.2d 153 (Ky.1970).

The relevant exchange between the prosecution and the informant is as follows:

Prosecutor: From your own knowledge, do you know if any people were arrested because of your information and conviction?

Mr. Donald: Yes, they were.

Prosecutor: Were these misdemeanor cases or felonies?

Mr. Donald: Felony cases.

Prosecutor: Are they serious crimes in Lexington?

Mr. Donald: Yes, they were.

Joint Appendix at 117.

The Kentucky Supreme Court and the United States District Court for the Eastern District of Kentucky found this error to be non-prejudicial in view of the other evidence of guilt. However, a review of the record leads us to conclude that Justice Liebson was correct when he stated that "much of that evidence was questionable." Indeed this was a "close case"—so close that the Commonwealth waited two years after the evidence against the accused was first compiled before it elected to prosecute. *Cooper*, slip op. at 2 (Liebson, J. dissenting). Thus, we disagree with the lower courts' conclusions that the testimony of the informant was not prejudicial given the "overall view of the quality of the other evidence against the accused." *Cooper v. Kentucky*, No. 84–SC–494–MR, slip op. at 4 (Ky. Feb. 28, 1985); Magistrate's Report and Recommendation at 3 ("A review of the record shows that there was indeed other evidence sufficient to support a conviction . . .").

This court has found that the trial court committed error with regard to each of petitioner's claims. We hold that, when considered cumulatively, these errors produced a trial setting that was fundamentally unfair. *See Walker*, 703 F.2d at 963. Accordingly, for the reasons set forth above, we REVERSE and REMAND this action to the district court with instructions to grant petitioner's writ of habeas corpus and release him from custody unless the Commonwealth elects to retry petitioner within ninety days from the issuance of the writ.