841 F.2d 1127
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dentist THACKER, Petitioner-Appellant,
v.
John REES, Warden, Respondent-Appellee.
 No. 86-5973.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1988.
 
 Before LIVELY, Chief Judge, and NATHANIEL R. JONES and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner-appellant Dentist Thacker appeals the judgment of the district court dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. Sec. 2254. For the reasons that follow, we affirm the judgment of the district court.
 
 I.
 A.
 
 2
 Petitioner was convicted on February 10, 1983, of the murder of his wife, Rebecca Kate Ratliffe ("Ratliffe"). The indictment against petitioner alleged that Ratliffe was beaten to death on the morning of April 27, 1982. Petitioner was jury-tried in the Pike County Circuit Court, Pike County, Kentucky, from February 7 through February 10, 1983, and on March 25, 1983, he received a sentence of life imprisonment.
 
 
 3
 During the course of the four-day trial, the prosecution called twenty-four witnesses and presented evidence tending to show that petitioner and Ratliffe fought frequently, that petitioner had previously threatened the life of his wife, that petitioner had a tendency to become violent when inebriated, and that Ratliffe had recently named him as a beneficiary on a life insurance policy. Petitioner maintained that on the date of the murder he came home from work early and discovered his wife's body in the bedroom of their home, and that she had apparently been "robbed and killed." When the police arrived, however, their suspicions turned toward petitioner, and he was arrested that afternoon.
 
 
 4
 Later, at the local jail, a police officer noted bloodstains on the petitioner's hands and clothing. The officer had petitioner remove his clothing and also took swabbings from petitioner's hands, and these items were later tested by a state-employed serologist. The police officer testified that he had observed small bloodstains on the left arm of petitioner's shirt, a small amount of blood in the thigh area of petitioner's blue jeans, a fairly large area of a "real thin bloodstain" on petitioner's underwear, and a bloodstain in the left chest area of his T-shirt. The police officer maintained that the bloodstains were readily apparent. The serologist's findings indicated that the bloodstains were of the same blood type as that of the victim.
 
 
 5
 At the trial, the defense maintained that the murder was the result of a robbery. Petitioner took the stand in his own behalf and testified that Ratliffe kept large amounts of cash (around $2,000.00) in her purse and that at the time he discovered her body, this money was missing. However, to rebut this evidence, the prosecution offered proof that the couple's house was basically intact after the incident.
 
 
 6
 Prior to trial, on January 28, 1983, petitioner's counsel moved the trial court to provide funds to allow petitioner to obtain his own serologist, but the motion was denied. In an in-chambers conference prior to the testimony of the state-employed serologist, petitioner's counsel stated to the trial judge:
 
 
 7
 I am not able to have a similar serologist expert for the defense.... This point is that I am stressing that [sic] as a result, I am incompetent to cross-examine the serologist, and because I am therefore incompetent to cross-examine the serologist I am not going to do so.
 
 
 8
 True to his promise, when the state serologist testified that the blood type found on petitioner's clothing matched the victim's blood type, defense counsel did not cross-examine the serologist. In closing argument, the prosecution emphasized the circumstantial evidence of the blood study as probative of petitioner's guilt, and further emphasized that this evidence had not been refuted by the defense.
 
 
 9
 Petitioner appealed his conviction to the Supreme Court of Kentucky. In his appeal, petitioner raised four arguments: (1) that the trial court had committed reversible error in not providing the defendant with a state-funded serologist; (2) that petitioner's seized clothing and post-arrest statements were fruits of an unlawful arrest because at the time of his arrest the police officials lacked probable cause, and therefore the clothing and statements should have been suppressed; (3) that the testimony of two witnesses regarding conversations with the victim was hearsay and should not have been admitted; and (4) that the prosecutor's closing argument was inflammatory and prejudicial.[1]
 
 
 10
 The Supreme Court of Kentucky, however, refused to address the merits of any of these claims. The court noted that petitioner had failed to preserve these alleged errors for appellate review and further that "it has not been demonstrated that the court's refusal to consider the merits of [petitioner's] claims would result in a manifest injustice." The court observed that as to the state-funded serologist, petitioner's counsel had failed to obtain a ruling from the trial court on his motion. Moreover, no contemporaneous objection was made to the admission of petitioner's clothing and post-arrest statements or to the testimony of witnesses regarding conversations with the victim.[2] Finally, the court observed that petitioner's counsel had failed to obtain a ruling from the trial court as to objections made to the prosecutor's closing arguments. As a result, petitioner's conviction was affirmed by the Supreme Court of Kentucky.
 
 
 11
 Petitioner then filed a motion to vacate his conviction pursuant to Kentucky Rule of Criminal Procedure (RCr.) 11.42[3] in the Pike County Circuit Court, where he had been convicted. In his motion, petitioner argued that his conviction should be vacated because the trial court's denial of the defense motion for funds to employ a state-funded serologist was a violation of defendant's right to due process under the Constitutions of the United States and the Commonwealth of Kentucky. The Pike County Circuit Court granted petitioner's motion, concluding that the denial of an appointed expert severely prejudiced the defense. The court noted, "[defense counsel] was rendered ineffective at trial solely by reason of the court's denial of the motion for funds, as the defense was thereby prevented from using its most powerful and effective defense tool, an independent expert to contradict the testimony of the key Commonwealth witness."
 
 
 12
 Petitioner's RCr. 11.42 motion also raised a claim of ineffective assistance of his counsel. As to the remaining claims presented to the Supreme Court of Kentucky and in his petition for a writ of habeas corpus in the present case (even assuming that they were included in his RCr. 11.42 motion), the Supreme Court of Kentucky held that petitioner forfeited these claims in his direct appeal.
 
 
 13
 The order vacating the judgment of conviction was then appealed by the commonwealth to the Kentucky Court of Appeals. The court of appeals reversed the Pike County Circuit Court judgment, concluding that "the trial court did not abuse its discretion in denying funds for a serologist where the defendant made no showing as to what manner he expected to be assisted in cross-examining the Commonwealth's serologist." The court found that while an indigent defendant is entitled to "reasonably necessary" expert assistance, discretion rests with the trial court in making the determination of whether assistance is necessary. The court pointed out that evidence other than the state serologist's testimony supported the petitioner's conviction. The Supreme Court of Kentucky denied discretionary review.
 
 B.
 
 14
 In his application for a writ of habeas corpus, petitioner raised the same four grounds he raised in his appeal to the Supreme Court of Kentucky; viz., (1) failure of the trial court to provide a state-funded serologist, (2) failure of the trial court to suppress petitioner's clothing and statements that allegedly were the fruits of an illegal arrest, (3) error by the trial court in admitting the "hearsay testimony" of two witnesses, and (4) failure of the trial court to sustain petitioner's objections to the prosecutor's closing arguments. The petitioner also raised as an additional ground for relief that he was denied effective assistance of counsel at trial.
 
 
 15
 The district court, adopting the recommendation of the magistrate to which this case was referred, dismissed the petition for a writ of habeas corpus. The court noted that the alleged error regarding the admitted articles of clothing, statements of petitioner, alleged hearsay statements, and alleged improper comments by the prosecutor, were not raised in petitioner's RCr. 11.42 motion and that petitioner therefore had not exhausted his available post-conviction remedies. As to petitioner's argument that the trial court committed error in not providing a state-funded serologist, the district court found that petitioner had failed in his motion to justify the appointment of an expert at state expense:
 
 
 16
 [A]s petitioner had access to the assistance of an expert and was provided with the results and reports of the expert who testified, absent a minimal showing of how the use of another expert would help petitioner's defense, it cannot be said that the denial of funds for an expert was error. Further, it is implicit that the determination of the petitioner's need for expert assistance was committed to the sound discretion of the trial judge. Here petitioner has made no showing that this discretion was abused.
 
 
 17
 Joint Appendix at 24 (citations omitted). This appeal followed.
 
 II.
 A.
 
 18
 The commonwealth first argues that petitioner has failed to exhaust his state remedies as to all the claims brought in his petition. The requirement of exhaustion of state remedies is found in 28 U.S.C. Sec. 2254(b), which provides:
 
 
 19
 An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
 
 
 20
 "The exhaustion [requirement] is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lunday, 455 U.S. 509, 518 (1982).
 
 
 21
 We first note that no exhaustion problem exists as to petitioner's due process claim regarding state-funded expert assistance. Although the Supreme Court of Kentucky declined to address this claim, the Kentucky Court of Appeals, in the context of petitioner's RCr. 11.42 motion, did reach the merits of this issue, and the Supreme Court denied review. Hence, the state court has addressed the claimed error, and the petitioner has no further remedies which can be pursued in state court. Cf. Cohen v. Tate, 779 F.2d 1181, 1185 (6th Cir.1985) ("We hold ... that [the cause and prejudice test] does not bar relief in this case because the [state] courts presented with petitioner's claims in his first post-conviction petition actually reached the merits of these two claims and did not treat petitioner's failure properly to take a direct appeal as dispositive."); Pillette v. Foltz, 824 F.2d 494 (6th Cir.1987) (holding that where a petitioner has not presented a claim for relief to the state court at all, the exhaustion requirement may be excused if an attempt to pursue state relief would be futile). Consequently, this issue is ripe for our review on the merits.
 
 
 22
 Petitioner's claims regarding the illegally obtained evidence, hearsay statements, and prosecutor's argument, however, present a very different picture. While we hold that petitioner has satisfied the exhaustion requirement with respect to these alleged errors in the sense that there exist "circumstances rendering [the state process] ineffective," see 28 U.S.C. Sec. 2254(b), we nonetheless find petitioner has defaulted in the state court by failing to comply with state procedure but has not shown "cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation." Wainwright v. Sykes, 433 U.S. 72, 84 (1977).
 
 
 23
 In Brown v. Allen, 344 U.S. 443 (1953), the Supreme Court held that a petitioner who has pursued a claim on direct appeal from his conviction is not required to repeat the process through state post-conviction remedies "on the same evidence and issues already decided by direct review...." Id. at 447. We have interpreted this rule conversely to mean that if a petitioner does not present a claim to the state appellate courts in a direct appeal of a conviction, then a petitioner must pursue the alternative post-conviction review in order to exhaust his remedies. Keener v. Ridenour, 594 F.2d 581, 584 (6th Cir.1979). However, the present case is distinguishable from Keener for two reasons.
 
 
 24
 First, petitioner did present his claims to the Supreme Court of Kentucky, but the Supreme Court was unable to reach the merits as petitioner failed to preserve the alleged errors. Second, even assuming that petitioner did pursue post-conviction relief, Kentucky courts have held that an RCr. 11.42 motion may not be used to raise again issues raised on direct appeal. Thacker v. Commonwealth, 476 S.W.2d 838 (Ky.1972) ("It is not the purpose of RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceeding, nor those that were raised in the trial court and upon an appeal considered by this court.").
 
 
 25
 Thus, we conclude that petitioner has pursued all available state remedies as to the above three claims raised in his petition in that "the substance of [his] federal habeas corpus claim [was] first ... presented to the state courts." Picard v. Connor, 404 U.S. 270, 278 (1971). See also Wiley v. Sowders, 647 F.2d 642 (6th Cir.1981). "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." Picard, 404 U.S. at 276. Here the state court was presented with an opportunity to rule on these claims but held it could not do so because petitioner failed to preserve the alleged error at the trial court level and had not shown that refusal to consider the merits of his allegation would result in a manifest injustice.
 
 B.
 
 26
 Although we conclude that petitioner has exhausted his state remedies as to the claims regarding the allegedly illegally obtained evidence, hearsay statements, and prosecutor's argument, we nonetheless find that he has procedurally defaulted in the state court and yet cannot show actual prejudice as a result. See Ferguson v. Knight, 809 F.2d 1239 (6th Cir.1987) (per curiam on petition for rehearing). In Ferguson, we held that irrespective of whether the petitioner had not exhausted his state remedies, we would not hear a claim of error where petitioner did not comply with Kentucky's procedural rules unless cause and prejudice is shown. Id. at 1242.
 
 
 27
 In Maupin v. Smith, 785 F.2d 135 (6th Cir.1986), we adopted a four-part analysis applicable in procedural default cases. First, we stated that a court presented with a claim of default must determine that a procedural rule "is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." Id. at 138. In the present case, it is clear that Kentucky's procedural rules bar petitioner's allegation of error in the state courts.
 
 
 28
 Second, a "court must decide whether the state courts actually enforced the state procedural sanction." Id. Here, the Supreme Court of Kentucky explicitly refused to consider petitioner's alleged errors. Third, we stated in Maupin that a court must determine whether the state procedural rule applied "is 'an adequate and independent state ground.' " Id. In this case, it is clear that the rules the Commonwealth of Kentucky applied are well-established, and indeed, as in Maupin, petitioner here does not contest Kentucky's interest in the application of and federal deference to its state procedure.
 
 
 29
 Finally, we stated in Maupin that once an adequate and independent state ground is identified which has been applied to bar a petitioner's claims, a federal habeas court must decline to address the merits of a petitioner's claims unless "the petitioner ... [demonstrates] under Sykes that there was 'cause' for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error." Id. (citing Reed v. Ross, 468 U.S. 1 (1984)).
 
 
 30
 Without addressing the question of cause for petitioner's default,[4] we find he was in any case not prejudiced as a result. Both the Kentucky Court of Appeals and the Supreme Court of Kentucky in their decisions found a wealth of evidence, above and beyond the evidence to which petitioner objects, that supports his conviction. After an independent review of the evidence, which includes the testimony of twenty-four state witnesses, we conclude that petitioner was not prejudiced by the admission of the evidence which he claims was illegally obtained, the alleged hearsay statements, and the prosecutor's remarks. Cf. United States v. Frady, 456 U.S. 152, 170 (1982) (holding actual prejudice requires a showing of "actual and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimensions."). Accordingly, we hold these issues have not been preserved for habeas review.
 
 C.
 
 31
 Although petitioner's claim of ineffective assistance of counsel was not raised on direct appeal, petitioner did challenge counsel's effectiveness in his RCr. 11.42 motion; however, the Pike County Circuit Court failed to rule on the issue. Under Kentucky law, claims of ineffective assistance of counsel are to be addressed initially to the trial court through an RCr. 11.42 motion. Thus, petitioner has complied with Kentucky procedure on this claim and has "fairly presented" it to the state court. Picard, 404 U.S. at 275.[5] Accordingly, we conclude that petitioner's ineffective assistance of counsel claim is appropriately before this court. However, we find the claim to be without merit.
 
 
 32
 Petitioner claims his counsel was ineffective in not objecting to the admission of certain evidence and in failing to cross-examine the serologist. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court addressed the showing which must be made by one challenging his counsel's performance:
 
 
 33
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 
 
 34
 Id. at 687.
 
 
 35
 Even were we to assume that petitioner's counsel's performance was deficient, none of the alleged errors have been shown to be prejudicial to petitioner's defense. Prejudice in this context requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Id. at 694. In light of all the other evidence pointing to petitioner's guilt, we hold that he was not prejudiced as a result of any errors made by his trial counsel.
 
 D.
 
 36
 Petitioner's final claim is that he was denied due process of law by the trial court's refusal to provide him state funds to employ an independent serologist. According to petitioner, the evidence presented by the state as to the source and substance of the blood samples taken from petitioner's clothing was crucial to the state's case. Petitioner therefore asserts that his request for an independent serologist should have been granted to allow him to properly prepare a defense. Additionally, he argues that this denial prevented his trial counsel from adequately cross-examining the state serologist.
 
 
 37
 In Ake v. Oklahoma, 470 U.S. 68 (1985), the Court held that a state trial court's refusal to provide an indigent defendant with expert psychiatric assistance may deprive the defendant of such a "basic tool" of his defense that it can result in a denial of a fundamentally fair trial. Id. at 83. The defendant in Ake was charged with murdering a couple and wounding their two children. At his arraignment and while in jail, his behavior was so bizarre that the trial judge, sua sponte, ordered him examined by a psychiatrist. As a result of this examination, Ake was determined not to be able to withstand trial and was committed to a state maximum security hospital. Subsequently, the chief forensic psychiatrist at the state hospital advised the court that Ake, who at the time was being treated with some success with an antipsychotic drug, had become competent to stand trial. The criminal prosecution against Ake then resumed.
 
 
 38
 Although Ake requested a psychiatric examination as to his insanity at the time of the offense charged, the trial court declined to provide such expert assistance. Indeed, at trial, although the defendant's case was based strictly on an insanity defense, no expert testified as to the defendant's mental competence at the time of the offense charged.
 
 
 39
 The Court found that the trial judge knew that insanity would be Ake's sole defense and also that none of the psychiatrists who examined Ake had undertaken an assessment of his mental condition at the time of the offense charged. Thus, the Court concluded that it was unreasonable for the trial judge to have denied defendant's request given the trial court's understanding of the facts of the defense and defense counsel's explanation for requesting expert assistance.
 
 
 40
 [W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the state must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.
 
 Ake, 470 U.S. at 83.[6]
 
 41
 Recently, in Moore v. Kemp, 809 F.2d 702 (11th Cir.1987) (en banc), the Eleventh Circuit addressed a challenge under Ake of a trial court's refusal to appoint a state-funded expert serologist for preparation of an indigent defendant's case. The Eleventh Circuit concluded that in order for the interest implicated in Ake to rise to an unconstitutional level "a defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the government automatically to provide indigent defendants with expert assistance upon demand." Moore, 809 F.2d at 712 (footnote omitted). The court went on to state:
 
 
 42
 [A] fair reading of [Ake ] is that a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof--by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony--he must inform the court of the nature of the prosecution's case and how the requested expert would be useful. At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime.... [T]he defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed.
 
 
 43
 Id. at 712 (footnote omitted).
 
 
 44
 As the above makes clear, our review of the trial court's decision must focus on the showing made as to the necessity of an expert, the type of expert required, how the expert would be useful, and also that a reasonable probability exists that denial of expert assistance would result in a fundamentally unfair trial. Here, petitioner's counsel "offered little more than undeveloped assertions that the requested assistance would be beneficial...." Caldwell, 105 S.Ct. at 2637 n. 1.
 
 
 45
 Petitioner's counsel made no showing that an expert would assist the defense or that without expert assistance his client would be denied a fundamentally fair trial. Defense counsel's statement to the trial court that without his own expert he was incompetent to cross-examine the prosecution's expert is also insufficient. It is undisputed that defense counsel had access to the results and reports of the prosecution's serologist. As a result, defense counsel had prior notice as to the nature of the state serologist's testimony. Nevertheless, defense counsel chose not to cross-examine the state serologist. In Moore, the Eleventh Circuit stated:
 
 
 46
 We recognize that defense counsel may be unfamiliar with the specific scientific theories implicated in a case and therefore cannot be expected to provide the court with a detailed analysis of the assistance an appointed expert might provide. We do believe, however, that defense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense case.
 
 
 47
 Moore, 809 F.2d at 712 (footnote omitted). In the present case, defense counsel merely made a decision to not educate himself as to the state serologist's testimony.
 
 
 48
 For these reasons, we find that petitioner did not meet his burden of showing that expert assistance was "reasonable necessary." Accordingly, we affirm the district court's dismissal of petitioner's argument that the state court's denial of his request for expert assistance entitled him to habeas relief.
 
 III.
 
 49
 For the foregoing reasons, we AFFIRM the judgment of the district court denying the petitioner habeas corpus relief.
 
 
 
 [1]
 The following remarks were made during the prosecutor's closing argument:
 Prosecutor: .. you folks have the evidence in front of you sufficient as a matter of law and as a matter of rights, and I think as a matter of moral ...
 Defense Counsel: Objection to a matter of law, Your Honor.
 Prosecutor: Your Honor, has there not been enough evidence as a matter of law to direct a verdict be returned? And as a matter of moral and social conscience, you can return a verdict of guilty on the evidence you have got in this case
 * * *
 After this exchange, the prosecutor continued with his closing argument, and defense counsel never secured a ruling on his objection.
 
 
 [2]
 Kentucky has a well-established requirement of timely objections in order to preserve error. See Pack v. Commonwealth, 610 S.W.2d 594 (Ky.1980); Cane v. Commonwealth, 556 S.W.2d 902 (Ky.Ct.App.1977), cert. denied, 437 U.S. 906 (1978)
 
 
 [3]
 RCr. 11.42 provides in pertinent part as follows:
 A prisoner in custody under sentence or a defendant on probation, parole or conditional discharge who claims a right to be released on the ground that the sentence is subject to collateral attack may at any time proceed directly by motion in the court that imposed the sentence to vacate, set aside or correct it.
 
 
 [4]
 In Murray v. Carrier, 106 S.Ct. 2639 (1986), the Court made it clear that the cause and prejudice test works in the conjunctive; a petitioner attempting to excuse a default in state court must show both cause and prejudice, and a failure on either point is fatal
 
 
 [5]
 Although the respondent argues that petitioner has defaulted on this claim by not securing a ruling from the Pike County Circuit Court, under the circumstances of this case, where petitioner was successful in his motion, we do not hold his failure to obtain a ruling on this issue to be a default under Kentucky law. See Walker v. Engle, 703 F.2d 959, 966 (6th Cir.), cert. denied, 464 U.S. 951 (1983) (citations omitted) (emphasis in original) ("[The cause and prejudice test] should not be applied to preclude federal courts from hearing federal constitutional claims when to do so does no disrespect to the state courts and their procedural rules. [T]he Sykes rule does not apply when it is not clear that the state appellate court had applied a procedural bar.")
 
 
 [6]
 Ake restricted its holding to psychiatric expert assistance. Ake, 470 U.S. at 83. In a subsequent case, the Court skirted the issue of "whether and when an indigent defendant is entitled to non-psychiatric expert assistance." Johnson v. Oklahoma, 108 S.Ct. 35, 37 (1987) (Marshall, J., dissenting from denial of certiorari); see Caldwell v. Mississippi, 105 S.Ct. 2633, 2637 n. 1 (1985). We nonetheless assume for sake of argument that Ake does extend to the type of expert assistance sought here