NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0181n.06
Filed: March 14, 2006

No. 04-3631

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KELVIN THOMPSON )
)
    Petitioner-Appellant, )
)
v. ) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
KHELLEH KONTEH, Warden ) NORTHERN DISTRICT OF OHIO
)
    Respondent-Appellee )

**Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge and ROSE, District Judge**[*]

**Rose, District Judge.** On February 4, 1994, an Ohio state jury convicted Kelvin Thompson of aggravated murder with a firearm specification. Thompson was sentenced to life imprisonment plus three years of consecutive incarceration. Following unsuccessful appeals to the Ohio Court of Appeals and the Ohio Supreme Court, Thompson sought a writ of habeas corpus in federal district court. The district court denied the petition in its entirety and did not issue a certificate of appealability.

Thompson then sought a certificate of appealability from this Court. This Court granted a certificate of appealability only on the issue of whether Thompson was denied the effective assistance of trial counsel. For the following reasons, we affirm the district court and deny

---

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio sitting by designation.

Thompson's petition for a writ of habeas corpus.

## I. Background

In 1993, Thompson, Wilbert Houston, and Lance Carter were indicted on one count of Aggravated Murder for the murder of Junius Chaney. They each pled not guilty and proceeded to trial together. Carter pled guilty midway through the trial and testified against Thompson and Houston. Thompson was found guilty and sentenced to life in prison for aggravated murder and to three years on a firearm specification.

Evidence was presented at trial that Houston shot Chaney with a shotgun provided by Thompson. Evidence was also presented that Thompson, who was on probation for drug trafficking and was concerned about drug trafficking in the area, was heard to say, "I'm goin' mess around and kill me a nigger tonight."

Thompson's conviction and sentence were affirmed by the Ohio Court of Appeals. The Ohio Supreme Court did not accept the case for review.

Thompson then filed a motion for post-conviction relief which was denied by the trial court. The Ohio Court of Appeals affirmed this decision, and the Ohio Supreme Court did not accept the case for review.

Thompson then filed a petition for a writ of habeas corpus that included several allegations regarding the trial, the verdict and effective assistance of counsel. The district court dismissed this petition and did not issue a certificate of appealability.

Thompson then sought a certificate of appealability from the Sixth Circuit. The Sixth Circuit granted a certificate of appealability on one of Thompson's issues and denied a certificate of

appealability on the other issues raised by Thompson.

Thompson was granted a certificate of appealability on the issue that he was denied the effective assistance of trial counsel because trial counsel failed to object to erroneous jury instructions. A certificate of appealability was granted because Thompson "made a substantial showing of the denial of a federal constitutional right" regarding the failure to object to the jury instructions. Thompson then filed a petition for rehearing which the panel denied.

Oral argument on Thompson's remaining issue was then scheduled. Subsequently, Thompson's Counsel sought postponement of the oral argument. This Court denied the Motion for Postponement and ruled that the issue may be submitted on briefs. This matter has now been fully briefed and is ripe for decision.

In this appeal, Thompson raises two arguments. He argues that the jury instructions are unconstitutional because they allowed him to be convicted of aggravated murder without proof that he had the requisite culpable mental state. Thompson also argues that the jury instructions are unconstitutional because the jury was not properly instructed to agree unanimously upon one theory in order to convict, and two theories were presented to the jury. According to Thompson, instructions regarding both conspiracy and aggravated murder were presented to the jury.

## II. Analysis

### A. Jurisdiction

Thompson asserted that he was being held by the State of Ohio in violation, among other provisions, of the Sixth Amendment of the United States Constitution. The district court, therefore, had jurisdiction over Thompson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In addition, we have appellate jurisdiction over the issue on which the certificate of appealability

was granted. 28 U.S.C. §§ 1291, 2253.

**B. Standard of Review**

When a district court denies a petition for a writ of habeas corpus, we review that court's legal conclusions de novo. *Hodge v. Hurley*, 426 F.3d 368, 375 (6th Cir. 2005)(citing *Palazzozlo v. Gorcyca*, 244 F.3d 512, 515 (6th Cir. 2001), *cert. denied*, 534 U.S. 828 (2001)). In addition, Thompson's petition was filed on March 15, 1999 and, therefore, falls within the scope of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. §2254. Under the AEDPA, we may not grant habeas corpus relief to a person in state custody with respect to any claim that a state court adjudicated on the merits unless the state court decision was "contrary to" clearly established Supreme Court precedent, "an unreasonable application of" clearly established Supreme Court precedent, or "an unreasonable determination of the facts in light of the evidence presented." *Hodge*, 426 F.3d at 375 (quoting 28 U.S.C. § 2254(d)).

**C. Ineffective Assistance of Trial Counsel**

The underlying basis of this appeal is Thompson's Sixth Amendment right to assistance of counsel. Thompson claims that the Ohio Appeals Court's decision to overrule the appeal of his ineffective assistance of counsel claim was either contrary to clearly established Supreme Court precedent or was an unreasonable application of Supreme Court precedent.

The Sixth Amendment accords criminal defendants a right to counsel. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). Further, "the right to counsel is the right to the effective assistance of counsel." *Id.*

To prove ineffective assistance of counsel, Thompson must show two things: deficient performance by trial counsel, and prejudice from trial counsel's deficient performance. *Hodge*, 426

F.3d at 375 (citing *Strickland*, 466 U.S. at 687). To satisfy the performance prong, Thompson must show that the representation he received "fell below an objective standard of reasonableness." *Id.* at 375-76. To satisfy the prejudice prong, Thompson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 376 (citing *Strickland*, 466 U.S. at 694).

## D. Jury Instructions

At issue in this appeal are the jury instructions and the jury's application of the jury instructions. The jury instructions were given without objection by Thompson's trial counsel to the issues about which Thompson appeals, and failure to object to constitutionally infirm jury instructions may constitute ineffective assistance of counsel. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)(citing *Gray v. Lynn*, 6 F.3d 265, 269 (5th Cir. 1993)).

If the jury instructions were proper, then Thompson's ineffective-assistance-of-counsel claim must fail. If the jury instructions were unconstitutional, then we must consider whether trial counsel's failure to object fell below an objective standard of reasonableness and whether Thompson was prejudiced by the jury instructions.

Thompson raises two arguments regarding the jury instructions. He argues that the jury instructions are unconstitutional because they allowed him to be convicted of aggravated murder without proof that he had the requisite culpable mental state. According to Thompson, the court did not require proof of the necessary mental state because the jury instructions allowed him to be convicted of conspiracy which does not require proof of the mental state that is required for aggravated murder.

Thompson also argues that the jury instructions are unconstitutional because the jury was

not properly instructed to agree unanimously upon one theory in order to convict and two theories were presented to the jury. According to Thompson, instructions regarding both conspiracy and aggravated murder were presented to the jury.

In this case, then, we must examine the challenged jury instructions and determine if the government was required to prove every element of aggravated murder, the charge of which Thompson was found guilty. We must also determine if there is a reasonable likelihood that the jury applied the jury instructions in a way that did not require the government to prove every element of the offense with which Thompson was charged and found guilty.

The jury instructions that are relevant to the issues here are as follows:

Now the burden of proof. Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt. The defendant must be acquitted unless the state produced evidence which convinced you beyond a reasonable doubt of every essential element of any crime charged in the indictment.
…
Complicity. Now you have heard testimony from Lance Carter, another person who pled guilty to this crime, who was said to have been an accomplice. The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude or self interest, but the admitted or claimed complicity of a witness may correct his credibility and make his testimony subject to grave suspicion and required that it be weighed with great caution.
It is for you as jurors in light of all the facts presented to you from the witness stand to evaluate such testimony and determine its quality and worth or its lack of quality.
An accomplice is one who purposely knowingly assists and joins another person in the commission of a crime.
Now aider and abetter. The defendant, Mr. Thompson, is charged as an aider and abetter under the complicity statute. Aiding and abetting is when two or more persons have a common person[sic] to commit a crime and when one does one part and the other performs the other part.
As to aider and better[sic], only the mere fact that a person is present when a criminal act is committed does not make him an aider and abetter, unless he does some substantial overt act in furtherance of the crime charged in the indictment.
Now aid. Aid means to help, assist or strengthen.
Abet means to encourage, counsel, incite or assist.
Overt act. Overt act means any conduct when it is of such character as to

manifest a purpose on the part of the actor that the crime charged be committed.

Purpose. A person acts purposely when it is his specific intent to cause a certain result. Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct.

Now how is that determined? The purpose with which a person brings about a result is determined from the manner in which it is done, the weapon used, if any, and all other facts and circumstances in evidence.

A person who purposely aids and abets or assists another person in the commission of a crime is just as guilty as if he personally performed every act constituting the crime.

Complicity. Complicity in law means that a person purposely either solicited or procured another to commit such criminal offense and/or purposely aided and abetted another or others in the commission of such criminal offense and/or conspired with another to commit an offense.

Solicit means to seek, to ask, to influence, to invite, to attempt, to lead on, to bring pressure to bear.

Procured. Procure means to get, obtain, adduce, bring about, motivate.

Aided and abetted. These terms have been previously defined and the same definitions apply.

Substantial overt act. A person cannot be convicted of a criminal act by conspiring to commit such crime unless a substantial overt act in furtherance of the conspiracy is proved to have been done by him and that such act was performed subsequent to, after that[sic], the defendant's entrance into the conspiracy.

An overt act is substantial when it is of such character as to manifest a purpose on the part of the actor that the object of the conspiracy would be completed. Depending upon your factual findings the law on aider and abetter may be applicable to the crime charged.

If you determine that the defendant acted in concert with others, then you shall refer to this instruction on aiding and abetting as I reviewed the elements of the crime charged.

Now, the crime charged in the indictment is aggravated murder, in violation of Revised Code 2903.01(A). Defendant Kelvin Thompson and Wilbert Houston are both charged under that indictment, together with a firearm specification.

Aggravated murder is purposely causing the death of another with prior calculation and design. Before you can find either or both of the defendants guilty you must find beyond a reasonable doubt that on or about the 5th day of November, 1993, in Cuyahoga County, the state of Ohio, either or both the defendants purposely caused the death of another, to wit Junius Chaney, with prior calculation and design.

Purpose to cause the death of Junius Chaney is an essential element of the crime of aggravated murder.

A person acts purposely when it is his specific intention to cause a cerain[sic]

result. In the minds of either or both defendants a specific intention to cause the death of Junius Chaney.

Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposefully is to do it intentionally and not accidentally.

Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct.

The purpose with which a person does an act is determined from the manner in which it is done, the means used and all the facts and circumstances in evidence.

Specific intent. No person may be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. Specific intent is no more or no less than a particular intent prescribed by statute. This statute mandates that a jury must find that the killing must have been done purposely and with specific intent and the defendant specifically intended to produce the death of Junius Chaney.

None of these factors in and of themselves are conclusive as to the defendant or defendant's intent, but they may be considered together with all of the other evidence whether such evidence was introduced by the prosecution or the defendant in determining whether either or both of the defendants specifically intended to cause the death of Junius Chaney.

If a wound is inflicted upon a person with a deadly weapon in a manner to destroy life or inflict great bodily harm, you may use these circumstances in your determination as to whether purpose or specific intent to kill has been proved in the evidence.

If you accept such an inference, then you must not consider it in and of itself as conclusive, but you may consider it with the totality of all the evidence and all the evidentiary facts and circumstances bearing upon the issue of intent.

…

Prior calculation and design means that for the purpose to cause - - prior calculation and design means the purpose to cause the death was reached by a definite process of reasoning in advance of the homicide, which process of reasoning must have included a mental plan involving studied consideration of the method and instrument with which to cause the death of another.

To constitute prior calculation there must have been sufficient time and opportunity for the planning of an act of homicide. And the circumstances surrounding the homicide must show a scheme designed to carry out the calculated decision to cause the death.

No definite period of time must elapse and no particular amount of consideration must be given, but acting upon the spur of the moment or after monetary consideration of the purpose to cause the death is not sufficient.

…

If you find that the state proved beyond a reasonable doubt all the essential elements of the offense of aggravated murder as charged in the indictment as to

either defendant, your verdict must be guilty of aggravated murder according to your findings as to that defendant.

  If you find that the state failed to prove beyond a reasonable doubt any one or more of the essential elements of the offense of aggravated murder as charged in the indictment as to either defendant, your verdict must be not guilty of aggravated murder according to your findings as to that defendant.

  …

  Now multiple defendants. We have two defendants here. You must decide separately the question of the guilt or innocence of each of the two defendants. It's a wholly separate matter. If you cannot agree upon a verdict as to both of the defendants, but do agree as to one, you must render a verdict as to the one upon whose guilt or innocence you do agree.

  You must separately consider the evidence applicable to each defendant as though he were being separately tried and you must state your findings as to each defendant uninfluenced by your verdict as to the other defendant.

  …

  Now because this is a criminal case the law requires that all 12 of you been in agreement before you can consider that you have reached a verdict, that is it takes a unanimous decision. A unanimous verdict are the only verdicts we accept.

JA 749-77.

Having set forth the relevant jury instructions, the analysis turns to Thompson's arguments. Thompson first argues that the jury instructions allowed him to be convicted for entering into a conspiracy and for aggravated murder and that the jury was not required to unanimously agree to one or the other. However, the jury was not instructed on a conspiracy charge. The jury was instructed on the charge of complicity.

Thompson also argues that the jury was instructed that he could be convicted of complicity if he "conspired with another to commit an offense" and that this is a charge of conspiracy. However, it is not. The instruction given specifically refers to being convicted of complicity and is taken from the Ohio Jury Instructions regarding complicity.

Therefore, the jury was not, as Thompson argues, given instructions on both conspiracy and aggravated murder. Only an instruction on complicity was given and there are not varying forms

of complicity as argued by Thompson.

Under Ohio law, a court may instruct the jury on complicity even though the defendant was charged as a principal. *O'Neal v. Morris*, 3 F.3d 143, 145 (6th Cir. 1993), *rev'd on other grounds*, *O'Neal v. McAninch*, 513 U.S. 432 (1995). The penalty for complicity is punishment as if the defendant were a principal offender of the offense charged. Ohio Rev. Code §2923.03(F).

However, charging a defendant with complicity as an aider and abetter does not alter the government's responsibility to establish the culpability required for commission of the principal offense. *O'Neal*, 3 F.3d at 145. Specifically, under Ohio law, purpose to kill must be proven by the government in situations where a defendant is charged as an aider and abetter to the crime of aggravated murder. *Clark v. Jago*, 676 F.2d 1099, 1102 (6th Cir. 1982), *cert. denied*, 466 U.S. 977 (1984).

In this case, before instructing on aggravated murder, the judge instructed on complicity. The first complicity instruction was with regard to the testimony of Lance Carter, who pled guilty midway through the trial and testified against Thompson. The jury instructions then indicated that Thompson was charged as an aider and abetter under the complicity statute.

The complicity instructions used are those set forth in the Ohio Jury Instructions. Specifically, the jury instructions regarding complicity provide that aiding and abetting occurs when two or more persons have a common purpose to commit a crime and when one does one part and the other performs the other part.

Following the complicity instruction, the judge indicated that, "If you determine that the defendant acted in concert with others, then you shall refer to this instruction on aiding and abetting as I reviewed the elements of the crime charged." He then reviewed the elements aggravated

murder. The issue is whether a reasonable juror could have interpreted these instructions to mean that Thompson could be guilty of aggravated murder, the crime charged, without the state proving that he had the requisite mental state for aggravated murder. The answer is "no."

The jury was first instructed regarding the credibility of the testimony of Lance Carter as an accomplice. The jury was then instructed as to the meaning of the complicity statute and specifically the meaning of an aider and abetter under the complicity statute. The jury instructions are clear that aiding and abetting is not a crime unto itself but is when two or more persons have a common purpose to commit a crime.

The instructions then provide that a person who purposely aids and abets or assists another person in the commission of a crime is just as guilty as if he personally performed the act constituting the crime. This instruction, taken alone, could cause some confusion. However, there is no confusion when this instruction is considered within the context of all of the instructions given.

The jury instructions then turn to the elements of aggravated murder. The elements of aggravated murder in Ohio are a finding that on or about a certain date, the defendant purposely and with prior calculation and design, caused the death of another. Ohio Rev. Code §2309.01(A); 4 OJI.503.01.

The jury instructions here first indicate that Thompson is charged with aggravated murder and then set forth the elements of aggravated murder including the required mental state. In this case, all of the elements of aggravated murder are presented by the jury instructions as indicated in Ohio law and Ohio Jury Instructions. The instructions set forth the elements and then further defined "purposely" and "prior calculation and design." "Purposely" was further defined to include the definition of "specific intent."

Following a description of the elements of aggravated murder, the jury was instructed that the state must prove each element of the charge of aggravated murder beyond a reasonable doubt. The relevant instructions conclude with a requirement that, if the state failed to prove beyond a reasonable doubt any one or more of the essential elements of the offense of aggravated murder as charged in the indictment, the verdict must be not guilty of aggravated murder.

A reasonable juror could not have interpreted these instructions to mean that Thompson could be guilty of aggravated murder, the crime charged, without the state proving that he had the requisite mental state for aggravated murder. The instructions clearly indicate that the crime charged was aggravated murder and that the state must prove every element of aggravated murder and that the requisite mental state is an element of an aggravated murder charge. Further, the jury instructions are clear that aiding and abetting under the complicity statute is when two or more persons have a common purpose to commit a crime and clear that complicity is not a crime in itself. Finally, the instructions discuss only a finding of aggravated murder and the jury found Thompson guilty of aggravated murder.

Thompson also argues that the jury instructions did not require unanimity. He specifically argues that the jury instructions present two theories and the jury had to unanimously agree on one to convict him. However, as determined above, the jury instructions only present one theory, aggravated murder.

Further, the jury instructions require unanimity. The jury instructions use the term "you" throughout. For example, the jury instructions require that, "the state produced evidence which convinced 'you' beyond a reasonable doubt of every essential element of any crime charged in the indictment. In addition, the jury instruction given with the verdict forms requires the appropriate

form to be signed by all twelve jurors. Therefore, the jury would reasonably understand that the term "you" was directed at each juror, that each juror must be convinced beyond a reasonable doubt of every essential element of the crime charged and that all must indicate their approval by signing the verdict form. Finally, the jury instructions specifically instruct that all twelve jurors must be in agreement before a verdict can be reached and that the verdict, to be accepted by the court, must be unanimous.

Following briefing on this matter, Thompson's Counsel sent a letter to the Court identifying a recently decided Third Circuit case where the court considered allegedly similar jury instructions. In *Laird v. Horn*, the Third Circuit affirmed the district court's grant of a writ of habeas corpus on the basis that Laird was denied due process because the jury was not required to find a specific intent in order to convict him for accomplice liability. 414 F.3d 419 (3d Cir. 2005). However, *Laird* is factually distinguishable from this case.

In *Laird*, the jury was instructed on accomplice liability as set forth in Pennsylvania law and then was instructed on first-degree murder. *Id.* At 422-23. Since Pennsylvania's accomplice liability is similar to Ohio's complicity liability, the order of instructions in this case is similar to the order in which the instructions were given in *Laird*. However, this is where the similarity ends.

The accomplice-liability charge in *Laird* concluded with the instruction that, "you may find the defendant guilty of a particular crime on the theory that he was an accomplice so long as you are satisfied beyond a reasonable doubt that the crime was committed and the defendant was an accomplice of the person who committed it." *Id.* Here, no such instruction was given. Here the jury instructions require that the aider and abetter has a common purpose to commit a crime and that

Thompson must have committed the elements of aggravated murder, the crime charged, to be found guilty.

The instruction on intent with regard to first-degree murder in *Laird* was given in the context of a charge on a diminished-capacity defense to first-degree murder. *Id.* at 427-28. In this case, there is no record of a diminished-capacity defense. In this case, the instruction on intent was clearly given as part of the aggravated murder instruction.

In *Laird*, the court had no way to know which of the two "irreconcilable" instructions the jurors applied in reaching their verdict of first-degree murder. *Id.* at 428. In this case, the instructions are not irreconcilable. The aiding and abetting instruction ends with the statement that the jury is to refer to the aiding and abetting instruction as the elements of aggravated murder are reviewed, and aggravated murder is the crime charged.

Further, the jury in this case was not given the option of findings other than guilty or not guilty of aggravated murder, and they clearly found aggravated murder. In the case of *Laird*, kidnaping, aggravated assault, false imprisonment, unlawful arrest and second and third degree murder were also charged and the jury could have found accomplice liability for either or any of those charges. *Id.* at 422.

### III. Conclusion

Thompson has failed to establish that the jury instructions are unconstitutional. His ineffective assistance of counsel claim must, therefore, fail. The district court's denial of Thompson's petition for a writ of habeas corpus due to ineffective assistance of counsel is affirmed.