NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0879n.06

No. 10-1155

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 22, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| CHRISTOPHER JAMES, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| BLAINE LAFLER, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

Before: KENNEDY, GIBBONS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Petitioner Christopher James helped his friend Deshawn Brown by retrieving an AK-47 rifle for him after a fight broke out in their neighborhood. James then accompanied Brown to an alley near the fight scene, where Brown fatally shot one of the participants. A jury later convicted James of first-degree murder as a result of his involvement in the killing. The Michigan courts affirmed his conviction. James petitioned for federal habeas relief, claiming that the evidence at trial was insufficient to support his conviction. The district court denied the petition. We affirm.

I.

The trial witnesses agreed about the basic facts. On August 2, 2002, an inebriated man named Larry Hamilton started yelling profanities at some kids who were playing hide-and-seek in

a Detroit neighborhood. One of the children, Leroy Goss, Jr., summoned his uncle, Leroy Goss, Sr., who confronted Hamilton and then struck him. Other people from the neighborhood then joined in beating and stomping Hamilton. Brown saw the beating, told the group to stop, and threatened to return with his gun. Eventually, Brown went to the house of James's then-girlfriend, Dacia Robinson, and told James to retrieve his AK-47 for him. James complied and then accompanied Brown to the scene of the shooting. The eyewitnesses agreed that Brown shot and killed the elder Goss. James then put the gun in a car and Brown and his girlfriend drove him home.

At the trial, Goss, Jr., testified that someone, maybe James, was with Brown at the time of the shooting and that "they" said to "get that" person. (That testimony contradicted his earlier statement and the testimony of other witnesses.) The prosecution also introduced James's statement to the police that Brown was "hyped," but that James believed that Brown intended to use the gun only to scare away Hamilton's attackers.

Throughout his direct appeal and his federal habeas petition, James has contended that the evidence at trial was insufficient to convict him of first-degree murder, even under an aiding-and-abetting theory. That is the only claim before us now.

II.

James says that the Michigan courts unreasonably determined the facts given the evidence at trial and unreasonably applied the constitutional test for sufficiency of the evidence. *See* 28 U.S.C. § 2254(d); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The district court disagreed and denied the petition. We review *de novo* its denial of the writ. *Mendoza v. Berghuis*, 544 F.3d 650, 652 (6th Cir. 2008).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). Nor is it unreasonable merely because "reasonable minds reviewing the record might disagree." *Id.* (internal punctuation omitted).

As an initial matter, James contends that the Michigan Court of Appeals mischaracterized two witnesses' testimony. First, the state court found that there was some "testimony from Goss[, Jr.,] that James encouraged Brown to shoot the victim." *People v. James*, No. 257585, 2005 Mich. App. LEXIS 3228, at *12 (Mich. Ct. App. Dec. 22, 2005). The relevant testimony was Goss's statement, "They was just saying get [the victim]." According to James, Goss meant that only Brown was speaking. James thinks that Goss clarified the initial ambiguity later in his testimony, when Goss identified a statement that Brown made as the "only words" spoken by "someone else." The Michigan Court of Appeals apparently read the transcript to mean that at some point Goss testified—perhaps implausibly, perhaps contradictorily, perhaps ephemerally—that James had encouraged Brown to "get" the victim. It is unclear whom Goss meant by "they"; but the Michigan court was reasonable in thinking that Brown would not tell himself to kill Hamilton, thus supporting an inference that James made the statement.

Second, the Michigan Court of Appeals stated that "Robinson [James's girlfriend] testified that Brown asked James for a gun because Brown 'had got into it with someone on the block.'" *Id.* James thinks that the Michigan court believed that Brown told James that this was his reason for seeking the gun. And James says the court's belief was inaccurate, since, he says, Robinson was simply describing why she believed Brown needed the gun, not what she heard Brown say. It is not

clear why this dispute matters, since in any event James admits that Brown told him that some people were beating up Hamilton. Moreover, James reads too much into this sentence of the court's opinion. The court is quoting Robinson, but not necessarily for what Brown had said. We cannot say that the Michigan court's determination was unreasonable.

James also argues that the Michigan court was unreasonable in applying *Jackson*. On this question, we apply "a double layer of deference": *Jackson* allows the state court to view the evidence in the light most favorable to the prosecution and to overturn only an unreasonable verdict, and AEDPA forbids us from overturning the conviction unless the state appellate court's sufficiency determination was unreasonable. *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). In Michigan, first-degree murder is the willful, deliberate, premeditated killing of another. *See People v. Bowman*, 656 N.W.2d 835, 841 (Mich. Ct. App. 2002). A person who encourages or assists a murderer is liable as a principal if the aider intends the murder to happen or, at the time of the assistance, knows that the murderer intends the killing. *See People v. Moore*, 679 N.W.2d 41, 49 (Mich. 2004).

James contends there was almost no evidence that, when he gave Brown the gun, he knew that Brown intended to kill someone—so little evidence, in fact, that the Michigan court was unreasonable in thinking that any reasonable jury could find him guilty. Instead, James says, he thought that Brown would use the gun as a peacemaker at the fight scene, rather than as a weapon.

To satisfy the knowledge element, James must have had "no substantial doubt" that Brown intended to kill. *Echelon Holmes, L.L.C. v. Carter Lumber Co.*, 694 N.W.2d 544, 547 (Mich. 2005). There was reason for James to think Brown had that intent here: Brown showed up at James's door and asked James to "get the Gat"; Brown was "hyped" and talked about a beating in progress; and

the gun he asked for was an assault rifle. These are all "facts and circumstances" from which a Michigan jury can infer "[a]n aider and abetter's knowledge of the principal's intent[.]" *People v. Bennett*, 802 N.W.2d 627, 634 (Mich. Ct. App. 2010) (citing *People v. Turner*, 540 N.W.2d 728, 734 (Mich. Ct. App. 1995)). So are the events that occurred after James gave Brown his gun. James accompanied Brown, rather than staying in his house, which the jury might have taken as a sign that James knew that Brown meant to do more than brandish the weapon. And after the shooting James left with Brown, from which the jury might have inferred that James was not surprised by Brown's actions.

It is true that James told the police he did not want Brown to kill Goss, Sr., and even asked why Brown would bother getting involved. But even if James was "unenthusiastic about the prospect" of Brown shooting someone, that "does not negate" his knowledge of Brown's intent. *Id.*

Still, James suggests, even if he knew that Brown was going to kill someone, James may have thought that the killing was justified to protect Hamilton—and killing in defense of others is not murder. *See People v. Dykhouse*, 345 N.W.2d 150, 158 & n.10 (Mich. 1984). For Brown to have justification, he must have "honestly and reasonably believed there was danger" of "serious bodily harm or death," and his actions must have been "reasonably necessary" to defend the person endangered. *People v. Escalona-Martinez*, No. 283067, 2009 Mich. App. LEXIS 1, at *1 (Mich. Ct. App. Jan. 6, 2009) (citing *People v. Riddle*, 649 N.W.2d 30, 34-35 (Mich. 2002)). James says he thought Brown's actions were reasonably necessary to stop the beating (which he thought was still in progress)—or at least, he did not know that the actions were unnecessary. The jury found that James knew what Brown's actions were going to be: shooting to kill. The jury must have also found

that deadly force was unnecessary to bring an end to the beating—and that James knew it was unnecessary.  The record amply supports those findings.

We cannot get into James's head that night and figure out what he thought Brown was going to do.  Nor could the Michigan Court of Appeals.  But that court was not unreasonable in holding that the evidence was sufficient to support James's conviction.

The district court's judgment is affirmed.