**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0737n.06

**No. 09-2510**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| DARNELL PARHAM, | ) | |
| | ) | **FILED**<br>***Jul 10, 2012***<br>LEONARD GREEN, Clerk |
|     Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MILLICENT WARREN, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
|     Respondent-Appellee. | ) | OPINION |
| | ) | |

**BEFORE: BOGGS and STRANCH, Circuit Judges; THAPAR, District Judge.**[*]

**JANE B. STRANCH, Circuit Judge.** Petitioner Darnell Parham appeals the denial of his

petition for a writ of habeas corpus, alleging he was denied due process when the state trial court

instructed the jury that he could be convicted of first-degree premeditated murder as an aider and

abetter with a lower mens rea than would be required to be convicted of the underlying offense.

Specifically, Parham alleges the instructions violated the constitutional requirement that "every

element" be proven beyond a reasonable doubt by permitting conviction for merely knowing that the

principal intended to kill the victim, rather than having the specific intent to kill the victim himself

as the first-degree premeditated murder statute requires. Because the jury instructions, when read

---

[*]The Honorable Amul Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

in their entirety, provided the accurate mens rea requirement, the judgment of the district court is

**AFFIRMED**.

## I. BACKGROUND

The prosecution alleged that, in the early morning of August 29, 1999, Parham drove Leo Kennedy to a nightclub in Detroit, Michigan so that Kennedy could kill Anthony "Tone" Mercer, a rival drug dealer. When questioned by the police, Parham initially gave police investigators two inaccurate and misleading statements denying his presence and involvement in the shooting, downplaying any disagreements between himself and Mercer, and blaming Mercer's death on Kennedy, who Parham claimed not to know very well. After learning his former girlfriend had spoken with police and implicated him, Parham gave a third statement to the authorities, saying it was "[b]ecause I didn't want you all to think I drove [Kennedy] up there" for the purpose of killing Mercer. Rather, Parham said, he had driven Kennedy to the club because Kennedy asked him "to go watch over [Parham's] cousins" there. After parking behind the club and waiting several minutes on a street corner for his cousins to arrive, Parham suggested that they return to his car, and he did so. Kennedy instead walked to the front of the club. Parham said that, upon reaching his car, he heard several gunshots and then saw Kennedy "running to the car telling me he just killed Tone Mercer." Parham then drove away, dropped Kennedy off at his mother's house, and returned to the club to see what had happened. While maintaining his original claim that he did not know Kennedy planned to kill Mercer that night, Parham did admit to having "a beef" with Mercer because of their rival drug gangs and acknowledged engaging in shootouts with Mercer. However, Parham told

police that Kennedy was not involved in the feud and had killed Mercer "just for the reputation," rather than at Parham's direction.

Parham and Kennedy were tried together for Mercer's murder in front of separate juries. The only direct evidence of Parham's involvement beyond his own statements was eyewitness testimony from Ronald Powell, who was fifteen years old at the time of the murder. Powell testified that he saw Parham and Mercer arguing outside the nightclub and heard Parham threaten to kill Mercer. He then saw Parham hand a black gun to Kennedy, who shot Mercer four times. However, in a statement to police shortly after the shooting, Powell gave a different account, in which he stated that he could not hear any specific words and that the shooter pulled a gun out of his own pocket. At trial, Powell testified that he attempted to have the additional information included in his witness statement but that the police did not do so.

In its jury instructions, the trial court reviewed the elements of first-degree premeditated murder, including the mens rea requirement that the "intent to kill was premeditated; that is, thought out beforehand." The court also provided a thorough explanation that conviction for first-degree premeditated murder "requires proof of a specific intent . . . to kill." These instructions were immediately followed by a discussion of the second-degree murder charge. The court then provided the aiding-and-abetting instruction that is the focus of this appeal:

> To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt: First, that the alleged crime was actually committed either by the Defendant or someone else. . . . Second, that before or during the crime, the Defendant did something to assist in the commission of the crime. Third, the Defendant must have intended the commission of the crime alleged *or must have known that the other person intended its commission at the time of giving the assistance.*

(Emphasis added). Parham's trial counsel did not make any objections to the jury instructions. The jury found Parham guilty of first-degree premeditated murder as well as possession of a firearm in the commission of a felony. The trial judge imposed a sentence of life without parole for the murder conviction and two years for the felony firearm conviction. Kennedy was also convicted of first-degree murder by his separate jury.

On direct appeal, Parham raised three issues, which did not include the present jury-instruction claim. The appeal was considered and denied by the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal in a one-sentence order. Parham raised the present claim for the first time in a Motion for Relief of Judgment.[1] The post-conviction court considered and rejected the issue on the merits.[2] The Michigan Court of Appeals and Supreme Court denied Parham's applications for leave to appeal on the basis that he failed "to meet the burden of

---

[1] Although the record does not contain Parham's Motion for Relief from Judgment, the State agreed with Parham's attorney at oral argument that this jury instruction issue was properly presented to the post-conviction trial court as a federal claim. The record does show that the issue was presented as a federal claim to the Michigan Court of Appeals and the Michigan Supreme Court.

[2] The post-conviction court's opinion provided the following analysis:

> The defendant also argues that this Court committed reversible error in its instruction on aiding and abetting when it told the jury that the Defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving assistance. According to Defendant, an aider and abettor must possess the same requisite intent as that required of a principal.
>
> The Michigan Supreme Court has recently reaffirmed that to convict a defendant of aiding and abetting a crime, a prosecutor must establish, among other elements, that the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [*People v. Moore*, 679 N.W.2d 41, 49 (Mich. 2004).] The instruction on aiding and abetting was not erroneous.

- 4 -

establishing entitlement to relief under MCR 6.508(D)."[3]  Parham filed a petition for a writ of habeas

corpus on January 19, 2007, which raised seven claims, including the present issue.  The habeas

petition was denied by the district court on each claim, after which Parham filed a Motion for

Certificate of Appealability to this Court.  We granted the Certificate only for the jury-instruction

issue.

## II.  ANALYSIS

### A.  Standard of Review

Parham filed his petition for a writ of habeas corpus after the effective date of the

Antiterrorism and Effective Death Penalty Act ("AEDPA").  However, both parties agree that we

should review the questions of law de novo rather than under AEDPA's deferential standard because

Parham presented his jury-instruction claim under both state and federal law but the state court's

analysis was confined only to state law.  *See Danner v. Motley*, 448 F.3d 372, 376 (6th Cir. 2006)

(citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).[4]  Therefore, his federal claim was never

---

[3]Although the State initially argued that Parham's claim was procedurally defaulted because the Michigan appellate courts denied his appeals under Mich. Comp. Laws § 6.508(D), it now concedes this position in light of this Court's decision in *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).  *See Mills v. Warren*, 436 F. App'x 506, 511-12 (6th Cir. 2011).  As a result, we need not consider Parham's argument that a purported exculpatory eyewitness affidavit is sufficient for him to meet the "actual innocence" exception to procedural default.  *See Gibbs v. United States*, 655 F.3d 473, 477-78 (6th Cir. 2011).

[4]We note that, after oral argument in this case, the Supreme Court granted certiorari to address this standard of review determination.  *Williams v. Cavazos*, 646 F.3d 626 (9th Cir. 2011), *cert. granted*, 132 S. Ct. 1088 (Jan. 13, 2012) (No. 11-465).  We need not wait for the Court to rule before deciding this case.  *See, e.g.*, *United States v. Buford*, 632 F.3d 264, 271 & n.3 (6th Cir. 2011).

"adjudicated on the merits" by the state court. *Id.* (quoting 28 U.S.C. § 2254(d)). This Court also reviews de novo the district court's legal conclusions on habeas review. *Braxton v. Gansheimer*, 561 F.3d 453, 457 (6th Cir. 2009).

Erroneous aider-and-abettor instructions are "not structural but [are] instead trial errors subject to harmless-error review." *Hedgpeth v. Pulido*, 555 U.S. 57, 60-61 (2008) (per curiam) (citing *California v. Roy*, 519 U.S. 2 (1996) (per curiam)). Under this standard, a reviewing court "should ask whether the flaw in the instructions 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 58 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

## B. Michigan's Aiding and Abetting Jurisprudence

Parham submits that the jury instructions violated his constitutional due-process right that "the State prove every element of a criminal offense beyond a reasonable doubt." *Sandstrom v. Montana*, 442 U.S. 510, 512 (1979). This is because, according to Parham, the aiding-and-abetting jury instruction allowed Parham to be convicted on a lower mens rea standard than would be required for the principal offense. Specifically, he argues that the aiding-and-abetting instruction permitted conviction based on mere knowledge of the principal's intent, whereas the underlying offense of first-degree premeditated murder requires the defendant himself to have an intent to kill with premeditation and deliberation. Mich. Comp. Laws § 750.316(1)(a).

The Michigan statute providing liability for aiding and abetting states simply:

Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its

commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

Mich. Comp. Laws § 767.39. The Michigan Supreme Court has explained that "[u]nlike conspiracy and felony murder, which also allow the state to punish a person for the acts of another, aiding and abetting is not a separate substantive offense. Rather, 'being an aider and abettor is simply a theory of prosecution' that permits the imposition of vicarious liability for accomplices." *People v. Robinson*, 715 N.W.2d 44, 47 (Mich. 2006) (internal citation omitted). The statute does not supply any particular mens rea standard for aiders and abettors but instead provides that they should be "tried" as if they were principals.

In the absence of a statutory definition for "aiding and abetting," the Michigan Supreme Court established a three-part test:

> (1) the crime charged was committed by the defendant or some other person;
> (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> (3) the defendant intended the commission of the crime *or had knowledge that the principal intended its commission* at the time that [the defendant] gave aid and encouragement.

*Moore*, 679 N.W.2d at 49 (quoting *People v. Carines*, 597 N.W.2d 130, 141 (Mich. 1999)) (emphasis added). This test was designed to follow the common law, under which "[p]rincipals in the second degree had to intend to commit the crime charged *or else be aware of the intent of the principal* in the first degree to commit that crime."[5] *Robinson*, 715 N.W.2d at 48 (emphasis added).

---

[5]Of course, satisfaction of this mental state must be coupled with a requisite act before a person may be subject to liability. *People v. Norris*, 600 N.W.2d 658, 663 (Mich. Ct. App. 1999) ("Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the

Thus, the Michigan Supreme Court has established a mens rea standard for aiding and abetting that includes the very "knowledge" requirement included in Parham's jury instructions: "knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement."[6] *Id.* (quoting *Moore*, 679 N.W.2d at 49). The state post-conviction court was thus correct in observing that the aiding-and-abetting jury instruction was consistent with Michigan case law. *See id.* ("[K]nowledge of the accomplice's intent constitutes sufficient *mens rea* to convict under [Michigan's] aiding and abetting statute.").

Parham suggests that Michigan courts have not, in fact, held that a mens rea of "knowing" is sufficient to convict for first-degree premeditated murder and that the cases cited by the State only address crimes in which the underlying offence does not require specific intent. Further, he notes that the Michigan Supreme Court has stated that "[t]he 'requisite intent' for conviction of a crime as an aider and abettor 'is that necessary to be convicted of the crime as a principal.'" *People v. Mass*, 628 N.W.2d 540, 548 (Mich. 2001) (quoting *People v. Kelly*, 378 N.W.2d 365, 378 (Mich. 1985)). Nonetheless, although Michigan aiding-and-abetting case law has developed by considering primarily non-specific-intent offenses, some recent cases have applied the same rules to first-degree premeditated murder, without considering the possible conflict. *See People v. Al-Jamailawi*, No. 292774, 2011 WL 2022952, at *4 (Mich. Ct. App. May 24, 2011); *People v. Harris*, No. 287724,

---

crime.").

[6]To satisfy the knowledge element, a defendant must have had "no substantial doubt" that the principal intended to kill. *James v. Lafler*, 452 F. App'x 673, 676 (6th Cir. 2011) (quoting *Echelon Homes, L.L.C. v. Carter Lumber Co.*, 694 N.W.2d 544, 547 (Mich. 2005)).

2010 WL 2925380, at *6 (Mich. Ct. App. July 27, 2010); *People v. Bennett*, 802 N.W.2d 627, 634 (Mich. Ct. App. 2010).[7]

The magistrate judge's Report and Recommendation determined that Michigan's aiding-and-abetting instruction was unconstitutional when applied to specific-intent crimes because an instruction allowing the jury to convict Parham upon finding intent *or* knowledge "is incompatible with the mental state needed to prove first degree premeditated murder," which is only intent. This instruction, the magistrate judge observed, "allowed conviction of [Parham] in violation of the 'elementary principle of due process that every element of the crime must be proven beyond a reasonable doubt.'" *Caldwell v. Bell*, 288 F.3d 838, 841 (6th Cir. 2002)); *See Robertson v. Cain*, 324 F.3d 297, 302-03 (5th Cir. 2003) (citing *Flowers v. Blackburn*, 779 F.2d 1115 (5th Cir. 1986)) (finding that a similar jury instruction unconstitutionally "relieved the state of the burden of proving [defendant's] specific intent to kill"). Despite the troubling nature of this issue to some of us, we need not resolve it in this case because, as discussed below, the surrounding portions of Parham's jury instructions provided sufficient explanation of the proper "intent" mens rea. Moreover, the evidence against Parham and the circumstances of the crime would make any error harmless.

---

[7]The *Bennett* dissent concluded that there was no evidence the defendant intended for the victim to be killed and that she had essentially been convicted for "gross negligence." *Id.* at 643 (Shapiro, J., dissenting). The jury instructions given in that case would allow the conviction of someone who, "whether because of stupidity, fear, self-delusion, or some other reason, . . . provides the assistance with the genuine subjective belief that it will not aid in a crime." *Id.* However, Judge Shapiro's solution was not to require a specific intent but rather to alter the jury instructions to require a subjective, rather than a "reasonable person," inquiry as to the defendant's knowledge. *Id.*

## C. Parham's Jury Instructions

An allegedly faulty instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Joseph v. Coyle*, 469 F.3d 441, 464 (6th Cir. 2006) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). In *Clark v. Jago*, this Court held that an "isolated portion of the charge relieved the state of its burden" to prove the defendant's mens rea by improperly stating that "purpose to kill" could be found in the mind of the defendant "and/or" his accomplice. 676 F.2d 1099, 1104 (6th Cir. 1982). Habeas relief was granted because the jury was never instructed that such a mens rea must be established for the defendant himself. *Id.* at 1105. By contrast, this Court denied habeas relief when an arguably confusing instruction on accomplice liability was coupled with additional language, which required the jury to find that the defendant had the appropriate mental state. *O'Neal v. Morris*, 3 F.3d 143, 146-47 (6th Cir. 1993), *vacated on other grounds sub nom. O'Neal v. McAninch*, 513 U.S. 432 (1995) (discussing standard of review, not whether jury instruction was erroneous). This Court explained that "an unartful boilerplate reiteration" of state complicity law simply "reminded" the jury of different verdict options shortly after the trial court's "unequivocal statement" of the appropriate mens rea. *Id.*; *see also Thompson v. Konteh*, 170 F. App'x 945, 952 (6th Cir. 2006) (aiding-and-abetting instruction not confusing when considered within context of other instructions). The Michigan Court of Appeals reached a similar result in *People v. Allen*, No. 246419, 2004 WL 2290483, at *4 (Mich. Ct. App. Oct. 12, 2004) (holding that "any misstatement by the court [on aiding and abetting] was minor in light of the lengthy and repetitive instructions concerning the specific intent requirement").

As in *O'Neal* and *Thompson*, the trial court instructed the jury on the elements of the underlying offense, including the mens rea requirement that the "intent to kill was premeditated; that is, thought out beforehand," and thoroughly explained that conviction for first-degree premeditated murder "requires proof of a specific intent . . . to kill." These instructions were immediately followed by a discussion of the second-degree murder charge and the challenged instruction on aiding and abetting. Although clarification of the relationship between the principal offenses and aiding and abetting would have been helpful, the jury was sufficiently instructed that it must find every element of the principal offense in order to convict. *See O'Neal*, 3 F.3d at 146. The court's jury instructions, when read in their entirety, properly required the jury to find Parham had a specific intent to kill.

Moreover, the jury received further explanation during deliberations after sending the judge the following note: "Does aid and abet apply to second degree or only first murder? [sic]" The judge returned a message indicating it applies to both. Although Parham argues this question reveals that the jurors "were concerned about that law regarding aiding and abetting," it also suggests the jury correctly recognized that "aiding and abetting is not a separate substantive offense." *See Robinson*, 715 N.W.2d at 47. In any event, the court's answer should have resolved any ambiguity.

## D. Harmless Error

After a careful review of the record, we agree with the district court that any error in the jury instructions was harmless in light of the facts of the case. Parham's defense was that he had absolutely nothing to do with the crime. The prosecution's theory, by contrast, was that Parham drove his co-defendant to a nightclub for the express purpose of killing a rival drug dealer. The

prosecution presented evidence that Parham argued with the victim before handing a gun to the shooter, that Parham admitted he had a motive to kill the victim, and that Parham admitted to driving the shooter to the nightclub after previously denying any involvement. In short, the jury had to decide whether Parham was completely ignorant of the shooter's intentions or whether he helped the shooter commit the murder on his own behalf. This was not a case in which there could have been a distinction between intent that the victim be killed and mere knowledge that the murder would occur. *Cf. Bennett*, 802 N.W.2d at 634 (defendant aware of principal's intent to kill victim but "may have been reluctant" and "unenthusiastic" about the prospect of the killing when she provided assistance). Under these facts, it is highly unlikely that a jury could have found one mens rea without the other.

Further support of a finding of harmless error in this case is the fact that Parham was also convicted of possessing a firearm in the commission of a felony, an offense that the jury was instructed required them to find that Parham "intentionally helped the person who possessed the firearm get or keep it." Although the jury was not required to find an intent to kill in order to convict of this offense, the verdict suggests the jury believed the eyewitness testimony and discredited Parham's statements to the police, in which he denied having known about a murder plan or having a gun the night of the murder. Despite Parham's plausible concerns about the overall sufficiency of the evidence in light of inconsistent and questionable witness testimony, we cannot conclude that the jury instructions as a whole—even if one part was erroneous—"had substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth*, 555 U.S. at 62.

## III.  CONCLUSION

Because the jury instructions, when considered in their entirety, properly instructed the jury as to the correct mens rea standard for first-degree premeditated murder under Michigan law, the district court's denial of Parham's habeas petition is **AFFIRMED**.